847 So.2d 1005 (2003)
CITY OF MIAMI, Appellant,
v.
Marcos VALDEZ, Appellee.
No. 3D02-2305.
District Court of Appeal of Florida, Third District.
April 23, 2003.
Rehearing, Rehearing and Certification Denied June 11, 2003.
*1006 Alejandro Vilarello, City Attorney and Christropher A. Green and Mimi V. Turin, Assistant City Attorneys, for appellant.
Robert Rossano, Miami, for appellee.
Before COPE and WELLS, JJ., and NESBITT, Senior Judge.
Rehearing, Rehearing En Banc and Certification Denied June 11, 2003.
WELLS, Judge.
The City of Miami appeals from a final judgment ordering it to pay $100,000 to Marcos Valdez pursuant to section 768.28, Florida Statutes (2002).
On December 6, 1996, Valdez and his passenger, Oscar Ortiz, were injured in an automobile accident with a City of Miami police car. Ortiz filed suit against the City in 1997 for injuries sustained in the accident and obtained a multi-million dollar judgment on a single claim sounding in negligence. The City and Ortiz subsequently entered into a $5 million settlement agreement.
Pursuant to the settlement agreement, the City paid $100,000 to Ortiz in accordance with the recovery limits of Florida's sovereign immunity tort statute, section 768.28(5), and agreed to assist in passage of a special claims bill to the Florida legislature for the $4.9 million balance. The claims bill was passed by the legislature and approved by the Governor on June 14, 2001. That bill authorized and directed the City to appropriate from City funds amounts sufficient to pay Ortiz $4.9 million in a series of three payments over three years.
On December 28, 1999, Valdez filed suit against the City for injuries that he sustained in the same accident. At mediation, the parties agreed to settle Valdez's claim for $100,000 subject to the City's right to contest Valdez's entitlement to collect from the City without submission of a special claims bill to the Florida legislature.
Pursuant to this agreement, the City argued below that the $200,000 per incident aggregate cap provided in section 768.28(5) had been exhausted by its payment of $100,000 to Ortiz and by its compliance with the $4.9 million special claims bill in Ortiz's favor. Valdez maintained that the $200,000 per incident aggregate cap had not been exhausted by Ortiz's recovery on a single claim (only $100,000 of which had been satisfied in an action at law under section 768.28) and that the claims bill procured by Ortiz had no effect on the City's obligation to make payment to resolve his action. The trial court adopted Valdez's position. We agree.
Sovereign immunity, a doctrine that pre-dates the founding of this country, operates to shield the sovereign (generally referred to here as governmental entities) from suit in the sovereign's courts. See Cauley v. City of Jacksonville, 403 So.2d 379, 381 (Fla.1981); D. Stephen Kahn, Legislative Claim Bills, FLA. B.J., Apr. 1988, at 23. Under this doctrine, adopted in Florida in 1822, compensation for wrongs committed by governmental entities *1007 may be obtained solely from the legislature through the arduous legislative claims bill process. See D. Stephen Kahn at 23; see also 6 Fla. Prac., Personal Injury & Wrongful Death Actions § 9.18 (2002-2003 ed.)(outlining multi step procedure for securing claims bill from Florida Legislature).
In 1969, the legislature waived this otherwise absolute immunity from suit and conferred limited jurisdiction on Florida's courts to entertain actions sounding in tort against governmental entities. See Ch. 69-116, Laws of Fla. (1969); Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla.1977). This waiver, now encompassed in section 768.28 of the Florida Statutes, establishes both the mechanism by which those injured by a governmental entity's tortious conduct may directly recover and the extent to which recovery may be had without resort to the cumbersome claims bill procedure:

Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages ... may be prosecuted subject to the limitations specified in this act....
* * * *
The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature.
§§ 768.28(1), (5), Fla. Stat. (2002) (emphasis added).
An action at law is not a legislative claims bill. See Dickinson v. Bradley, 298 So.2d 352, 354 (Fla.1974) (confirming that the purpose of a legislative claims bill is to discharge a "moral obligation"). Legislative claims bills are utilized either after procurement of a judgment in an action at law or as a mechanism to avoid an action at law altogether. See Gerard v. Department of Transp., 472 So.2d 1170, 1172-73 (Fla.1985). And section 768.28 does not state that a legislative claims bill award may be applied to satisfy the per claim/per judgment or aggregate caps applicable to claims and judgments in actions at law under that section. See Berek v. Metropolitan Dade County, 422 So.2d 838, 840 (Fla.1982) (confirming that section 768.28 limits the amount that may be recovered in a judicial proceeding); Rice v. Brown, 645 So.2d 1020, 1022 (Fla. 2d DCA 1994) (stating that tort judgments against governmental agencies "may not be judicially enforced in an amount exceeding $200,000 for all claims arising out of one incident") (emphasis added); see also Comer v. City of Palm Bay, 147 F.Supp.2d 1292, 1298 (M.D.Fla.2001) (holding that "the $100,000 clause limits the maximum judicial (as opposed to legislative) recovery to $100,000 for all claims that a single plaintiff brings ... in a single action resulting in a single judgment")(emphasis added). Rather, as pertinent here, section 768.28 plainly states only that: (1) a governmental *1008 entity may, in an action at law, be compelled to pay up to a total of $200,000 on all claims and judgments, no matter how many, arising from a single incident or occurrence; and (2) a single claimant may recover in an action at law, up to $100,000 for each of his, her or its claims or judgments arising from a single incident, so long as the total amount paid to all claimants in all such legal proceedings does not exceed a total of $200,000. See Comer, 147 F.Supp.2d at 1298. This statute does not state that any amounts awarded pursuant to a legislative claims bill may or should be applied against the statutory caps imposed by section 768.28 in actions at law.
Familiar rules of statutory construction teach that when a law expressly describes a particular situation where something should apply, an inference must be drawn that what is not included by specific reference was intended to be omitted or excluded. See Lowe v. Broward County, 766 So.2d 1199, 1208 (Fla. 4th DCA 2000); see also Ideal Farms Drainage Dist. v. Certain Lands, 154 Fla. 554, 19 So.2d 234, 239 (1944). A reading of section 768.28 supports the conclusion that had the legislature intended that any amounts procured by means of claims bills be applied to exhaust the per person/per incident waiver of immunity, the legislature would have included such a provision. While section 768.28 provides for a number of eventualities and gives instruction on how the waiver of immunity works, it makes no mention of the novel exhaustion argument advanced by the City.
Where, as here, the language of the statute is clear and unambiguous and conveys a clear and definite meaning, the statute should be given its plain and obvious meaning. See Jackson County Hosp. Corp. v. Aldrich, 835 So.2d 318, 329 (Fla. 1st DCA 2003); Prewitt Management Corp. v. Nikolits, 795 So.2d 1001, 1005 (Fla. 4th DCA 2001); see also Capers v. State, 678 So.2d 330, 332 (Fla.1996); St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla.1982). A court's function is to interpret statutes as they are written and give effect to each word in the statute. See Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 324 (Fla.2001). Courts are obligated to adopt a construction of statutory provisions which harmonizes and reconciles them with other provisions of the same act. See Woodgate Dev. Corp. v. Hamilton Inv. Trust, 351 So.2d 14, 16 (Fla.1977); State v. Putnam County Dev. Auth., 249 So.2d 6, 10 (Fla.1971); Allstate Ins. Co. v. Rush, 777 So.2d 1027, 1032 (Fla. 4th DCA 2000). Here, the City advocates a limitation not provided for in the statute and that the express language of the statute directly refutes.
While the per person/per incident limitations may, in some instances, make unavoidable a race to the courthouse, the reading of the statute advocated by the City will clearly eviscerate one of essential purposes of this waiver which is to obviate for as many claimants as possible resort to the more cumbersome legislative claims bill route to recovery. See D. Stephen Kahn, supra at 24 (concluding that the intended effect of section 768.28 is to reduce the number of claims bills submitted to the legislature). Take for example a government agency that commits a tortious act injuring twenty one individuals. Individual A has serious injuries, with damages of $1,000,000. The same incident results in minor injuries, with damages of $3,000, to each of the other twenty individualsIndividuals B through U. Under the City's analysis, the procedure encompassed by section 768.28 would result in no more than a race to the courthouse and then to the legislature. If Individual A *1009 acts with speed, he can collect $100,000 in a court judgment, proceed to the legislature for the balance, wipe out the $200,000 aggregate cap and leave Individuals B through U with no alternative but to proceed to Tallahassee to initiate twenty claims bills in the hopes of being compensated for their cumulative $60,000 in damages. If B through U fail to take those steps required to obtain legislative claim bills, their injuries will go unredressed.
Moreover under this analysis, Individual Z, a new claimant, may dash in front of Individual A, directly seeking a claims bill without first obtaining a judgment and wipe out the entire $200,000 aggregate cap, leaving even A, as well as B through U, with only the option of seeking claims bills before a single penny is directly paid by the government agency. This is not what the limited waiver of sovereign immunity encompassed in Chapter 768, with its by-pass of the legislative claims bill procedure, purports to accomplish.
In sum, the amounts procured through means of a legislative claims bill have no application to the limited amounts that may be directly procured in an action at law in accordance with section 768.28, a provision that must be strictly construed. Berek, 422 So.2d at 840. Valdez is not, therefore, precluded from collecting the $100,000 statutory cap on his claim arising from the accident because when that amount is combined with the $100,000 paid as a result of the Ortiz judgment, the total amount does not exceed the $200,000 statutory cap. See State Dept. of Health and Rehabilitative Servs. v. T.R. ex rel. Shapiro, 27 Fla. L. Weekly D1837, 2002 WL 1841554, 847 So.2d 981 (Fla. 3d DCA Aug.14, 2002) (holding that two claimants each could obtain $100,000 from the Department of Health and Rehabilitative Services pursuant to a judgment, but that "the portion of the judgment exceeding $100,000 per [claimant] must be sought from the Legislature").
Accordingly, the final judgment of the lower court is affirmed.